Ruth T. Lengsfield v. Commissioner. Coralie Mayer Lengsfield v. Commissioner. Blanche L. Brown v. Commissioner.
Lengsfield v. Commissioner
Docket Nos. 49963-49965.
United States Tax Court
T.C. Memo 1955-257; 1955 Tax Ct. Memo LEXIS 82; 14 T.C.M. (CCH) 1024; T.C.M. (RIA) 55257; September 16, 1955
*82 Albert B. Koorie, Esq., 629 Common Street, New Orleans, La., for the petitioners. Graham R. E. Koch, Esq., for the respondent. OPPER
Memorandum Findings of Fact and Opinion OPPER, Judge: Respondent determined the following deficiencies in income tax, which petitioners contest in these consolidated proceedings: Docket No.
Year
Petitioner
Deficiency
49963
1950
Ruth T. Lengsfield
$1,289.84
49964
1947
Coralie Mayer Lengsfield
1,039.89
49964
1948
Coralie Mayer Lengsfield
965.48
49964
1949
Coralie Mayer Lengsfield
789.26
49964
1950
Coralie Mayer Lengsfield
689.70
49965
1947
Blanche L. Brown
243.00
49965
1948
Blanche L. Brown
108.00
49965
1949
Blanche L. Brown
107.00
49965
1950
Blanche L. Brown
214.00 A penalty of $89.05 was determined against Ruth T. Lengsfield for substantial underestimation of estimated tax, section 294(d)(2), Internal Revenue Code of 1939. The propriety of the penalty is conceded if the deficiency in income tax is proper. All other deficiencies are disputed. The sole issue is whether certain sums received from Lengsfield Brothers, Inc., were gifts or distributions of earnings taxable as dividends. Findings of Fact Some of the facts are stipulated and are hereby found. Petitioners filed their respective returns *83 with the collector of internal revenue for the district of Louisiana. In December 1919, Benjamin Lengsfield, a retired businessman, joined his three unmarried sons, Jacob, Harry, and Byron Lengsfield, in forming a partnership to manufacture paper boxes. Business under the name "Lengsfield Brothers" commenced on January 1, 1920. The business was organized as a result of efforts of Byron who induced his father to join them to secure the benefit of the father's advice and experience in financing and management. Benjamin Lengsfield was conscious of his parental obligations. He had always actively interested himself in the welfare of his children and their families. He counseled them in their personal affairs, as well as in their business investments, and particularly in budgeting their personal and household expenditures. In addition to the three sons referred to above, he was the father of: Fred, a married son, Blanche L. Brown and Carrie Loeb, two married daughters, and Retta, who has never married. None of these four children or their spouses were ever members of or employed by the partnership, nor had they any interest therein. On February 20, 1920, Fred died leaving his widow, Elese, *84 and two minor children. Upon his death, Elese deposited her available cash of $5,000 with the partnership in return for interest at an agreed rate of 7 per cent per annum. Benjamin Lengsfield had required this deposit. He also required his three partner-sons to contribute to her support, along with himself, a sum which, added to the interest, would amount to $100 per month. On October 1, 1920, the monthly allowance was increased to $125 due to difficulty in meeting living expenses. The partnership made the monthly payments to her and recorded them in a ledger account entitled, "Mrs. Fred Lengsfield Interest & Payment A/C." The interest was charged to expense and the balance was charged, on the partnership books, to the personal accounts of the four partners. In December 1927, Blanche's husband died, leaving her with three minor children. She deposited her available cash of $2,000 with the partnership at an agreed interest rate of 7 per cent per annum. Commencing January 1, 1928, Benjamin Lengsfield and his then two unmarried sons, Jacob and Harry, joined in contributing a sum which, added to the interest, would give her $100 per month, because of the loss of support occasioned by *85 the death of her husband. Byron, who was a member of the partnership, did not contribute any portion of these monthly payments. The partnership recorded the payments in an account entitled, "Mrs. Blanche Brown Interest & balance was charged, on the partnership books, to the personal accounts of the three contributing partners. In January 1929, the business was incorporated as "Lengsfield, Brothers, Inc.," hereafter sometimes referred to as the corporation. The corporation continued to give Elese and Blanche the monthly payments. In June 1937, the monthly payments to Blanche were increased to $125. Neither Elese nor Blanche rendered any services, direct or indirect, to the corporation. The accounts to which the payments were charged were entitled "Interest and Payments Accounts." The corporation, like the partnership, charged as an expense of the business that portion of the monthly payments which represented interest. The balance was charged to the surplus account of the corporation. On November 19, 1932, Benjamin Lengsfield died. His widow acquired one-half of his stock, amounting to 531 shares, and his six living children and the children of his deceased son inherited the remaining *86 half, subject to the usufruct (life estate) of the widow on all of the shares. At her death on May 19, 1937, her 531 shares were inherited by her children and grandchildren in the proportions of one-seventh to each line of descent. The widow had replaced her husband as vice president and had been voted an annual salary, which was reported as income. On December 5, 1942, Jacob, then president of the corporation, died. His widow, Coralie Mayer Lengsfield, acquired 60 shares of stock which represented her one-half of the community interest therein. The 716 shares comprising his separate estate were willed to his brother, Byron, subject to the usufruct in favor of Coralie. The board of directors authorized a monthly payment to Coralie of $500 for a period of 2 years beginning January 1, 1943. The resolution characterized the payments as a gratuity in view of the efforts exerted by her late husband in the development and progress of the corporation. On January 19, 1945, * the board of directors adopted the following resolution: "The President stated the meeting was called for the purpose of considering the continuation of paying of the gratuity payments to Mrs. J. H. [Coralie Mayer] Lengsfield *87 which expired on December 31, 1944. "After considerable discussion it was unanimously agreed that the Company continue to pay Mrs. J. H. Lengsfield a gratuity of $250.00 per month beginning January, 1945 and that such amounts should be paid to Mrs. Lengsfield until such time as the Board, in its discretion, considers it advisable." The payments were entered in an account on the corporate books entitled, "Mrs. J. H. Lengsfield Gratuity A/C." The payments were charged against surplus. On April 19, 1948, Byron, then president, died leaving a widow Ruth T. Lengsfield and two sons. Ruth received 328 shares of stock, representing her half of the community ownership in the corporation. Byron's 776 shares were inherited by his two sons subject to the usufruct in her favor. On April 20, 1948, the board unanimously adopted the following resolution: "The President stated that the meeting was called for the purpose of making a gratuity to Mrs. B. H. [Ruth T.] Lengsfield, Sr. widow of the deceased President of the Company. "It was unanimously agreed among the Directors, in view of the leadership, counsel and efforts put forth by the late President in the development and progress of the Company *88 since its inception that his widow, Mrs. B. H. Lengsfield, Sr. be paid the sum of $22,425.00, payable monthly beginning April, 1948 and ending December 31, 1948, and for the calendar year 1949 the sum of $6,000.00 payable at the rate of $500.00 per month. "It was the unanimous opinion of the Board that the amounts were quite reasonable in view of the services rendered to this corporation by the deceased President and upon motion duly made, seconded and unanimously carried, payment of the amounts as set forth in the preceding paragraph were approved." On January 3, 1949, the board adopted the following resolution: "The President stated the meeting was called for the purpose of considering the continuation of paying of the gratuity payments to Mrs. B. H. Lengsfield. "After considerable discussion it was unanimously agreed that the Company continue to pay Mrs. B. H. Lengsfield a gratuity of $500.00 per month beginning January, 1949 and that such amounts should be paid to Mrs. Lengsfield until such time as the Board, in its discretion considers it advisable." These payments were also charged against surplus. Income tax returns were filed by each of these widows for each year prior to and *89 for the years involved here. Coralie and Ruth never reported any of the payments as income. Blanche reported only the portion representing interest. In addition to Blanche and Elese, various shareholders, from time to time, deposited cash for which they were paid interest. Each reported on his return as income the interest so received. Petitioners reported any declared dividends received from the corporation. Petitioners never voluntarily purchased any shares in the corporation; all of their acquisitions were by inheritance. The following list of shareholders at the time of incorporation, and during the years in question, indicates the reasons for the changes in holdings: Jan. 1,
December 31,
1929
1947
1948
1949
1950
Benjamin Lengsfield
531
Byron Lengsfield, Sr. [1] *95 *90 656
956
Harry Lengsfield [2]
656
836
836
716
716
Jacob Lengsfield
656
Retta Lengsfield [3]
1
121
121
121
121
Byron Lengsfield, Owner
716
Coralie Mayer Lengsfield, Usuf. [4]
Blanche Brown [5]
109
109
109
109
Lee Brown [5]
1
1
121
121
Mrs. Carrie Loeb [6]
60
60
60
60
Ruth T. Lengsfield [7]
448
448
448
Ruth T. Lengsfield, Usuf. [8]
Byron Lengsfield, Owner
254
254
254
Jack Lengsfield, Owner
254
254
254
Coralie Mayer Lengsfield, Usuf. [8]
Byron Lengsfield, Jr., Owner
358
358
358
Jack T. Lengsfield, Owner
358
358
358
2,500
2,799
2,799
2,799
2,799 The following is a tabulation of profits and their disposition for 1942 through 1951, from the corporation income *91 tax returns: Net Income
Dividends
Net Increase
Year-End
Year
After Taxes
Paid
in Surplus
Surplus
1942
$ 3,505.18
$13,995.00
$ (424.99)
$ 43,617.48
1943
24,353.26
8,397.00
6,058.31
49,675.79
1944
19,678.40
14,090.15
63,765.94
1945
18,193.87
8,397.00
1,217.70
64,983.64
1946
82,650.03
8,397.00
65,666.32
130,649.96
1947
84,903.85
16,794.00
60,158.47
190,808.43
1948
47,579.07
16,794.00
28,660.77
219,469.20
1949
27,945.85
8,397.00
11,332.60
230,801.80
1950
47,254.55
33,018.30
263,820.10
1951
42,752.38
28,517.38
292,337.48 The declaration of dividends has been discontinued since 1949 due to plant expansion at a cost approximating $275,000, financed in part by an insurance company loan of $190,000. Prior to voting the payments to Ruth and to Coralie, the members of the board of directors, who were the owners of a majority of the shares, discussed the proposal with the remaining shareholders, who consented to the payments. No question has ever been raised by any of the shareholders as to the authority of the board to make the payments in question. The deficiencies determined by respondent are due to the failure to report the following as gross income: by Ruth T. Lengsfield, $6,000 in 1950, by Coralie Mayer Lengsfield, $3,000 in each of the years *92 1947, 1948, 1949, and 1950, and by Blanche L. Brown, $1,340 in each of the years 1947, 1948, 1949, and 1950. All the omissions consist of the payments here at issue. The monthly payments received by the petitioners were distributions of profits taxable to the recipients as dividends. Opinion We agree with the statement in petitioners' brief that "The facts in these * * * proceedings are most unusual and have not, in our belief, ever been encountered in a similar proceeding." We may even accept, at least for purposes of discussion, the further comment that "Here was a closely knit, old-fashioned family which practiced the highest ideals of family principles. Whenever any member was in want, the other members came to his assistance." The pattern of family solidarity evident through the years is shown to lend considerable force to petitioners' characterization. But closer scrutiny may reveal a different solution to the present controversy from the "corporate gift" concept urged by petitioners. Payments to the widow of a familymember began when the family business was a partnership. The effect of the payments then made was that each individual partner was contributing a share of the widow's *93 living expenses. When the business was incorporated, a similar result was reached by charging the payments to surplus. This practice continued through the years. [1] Moreover, at both stages the participation of the widow in question in the business was given recognition before contribution of the remainder. Interest was paid and accounted for to the extent that funds had been loaned to the enterprise. Neither petitioners nor respondent contend that the other stockholders made a gift of their share of the dividends, see Norman G. Nicolson, 13 T.C. 690, and we shall accordingly disregard any such possibility. See Regulations 108, section 86.2(a)( 1). But if we can assume a continuation of the original intention as applying to the payments now in controversy, we must conclude that what was intended - even if that evidences what was accomplished, cf. Alice M. Macfarlane, 19 T.C. 9, with Thomas v. Commissioner, (C.A. 5) 135 Fed. (2d) 378 *94 - was a distribution of corporate profits to some stockholders, but with the consent of all; the remaining family members making what was perhaps in reality a personal contribution to the widows by raising no objection to a distribution out of corporate earnings of the amount necessary to augment the widows' otherwise earned dividends. The fact that the remaining shareholders affirmatively consented, or at least made no objection, to the payments reinforces the concept that these were dividends. The recipients were majority (63 per cent) shareholders and most of the others were close relatives. In addition, two of those remaining were drawing large salaries from the corporation. In the statutory language [2] each of these payments was a "distribution * * * by a corporation to its shareholders." There were earnings and profits available which were consequently the source of the distributions. We cannot escape the conclusion that by legislative definition they were "dividends." None of the exceptional circumstances of the Aprill case [3] exist here. Among other things, the deceased husbands were not in each instance valued officers, the duration of the payments was not limited, and reliance on respondent's rulings was not shown to be the mainspring of the corporate action. Nor is it significant that some of the stockholders became so "by accident" as petitioner insists. In the years before us, for whatever reason, the relationship existed. We conclude that respondent's treatment of the payments was correct. Decisions will be entered for the respondent. Footnotes
1. Byron Lengsfield acquired the increase in shares from 1929 to 1947 as follows: By Purchase
120
Inheritance - Benjamin Lengsfield, father
60
Inheritance - Jacob Lengsfield, brother
120
Total increase in shares
300
Internal Revenue Code of 1939. SEC. 115. DISTRIBUTIONS BY CORPORATIONS. (a) Definition of Dividend. - The term "dividend" when used in this chapter (except in section 201(c)(5), section 204(c)(11) and section 207(a)(2) and (b)(3) (where the reference is to dividends of insurance companies paid to policy holders)) means any distribution made by a corporation to its shareholders, whether in money or in other property, (1) out of its earnings or profits accumulated after February 28, 1913, or (2) out of the earnings or profits of the taxable year (computed as of the close of the taxable year without diminution by reason of any distributions made during the taxable year), without regard to the amount of the earnings and profits at the time the distribution was made. * * *
[2]
↩
Harry Lengsfield's changes in stock ownership were the result of the following trans-
actions: Shares owned at date of incorporation
656
Increase by: Purchases
120
Inheritance - Benjamin Lengsfield, father
60
Decrease: Sale to Lee B. Brown - 1949
120
Shares owned
716
3. Retta Lengsfield inherited 120 shares from Benjamin Lengsfield, father. ↩
4. Byron Lengsfield, Sr., acquired 716 shares from Jacob Lengsfield, brother, subject to usufruct of Mrs. Coralie Mayer Lengsfield, widow of deceased. ↩
5. Mrs. Blanche Brown acquired 110 shares by inheritance from Benjamin Lengsfield, father, and subsequently sold one share to her son, Lee B. Brown. ↩
6. Mrs. Carrie Loeb acquired 60 shares by inheritance from Benjamin Lengsfield, father. ↩
7. Ruth T. Lengsfield received 448 shares upon the death of her husband, Byron Lengsfield, which represents 1/2 of the community shares owned. ↩
8. Byron Lengsfield, Jr., and Jack T. Lengsfield acquired by inheritance from Byron Lengsfield, Sr., father, 254 shares each and 358 shares each subject to the usufruct of Ruth T. Lengsfield and Coralie Mayer Lengsfield, respectively.↩
1. Such charges to surplus had the effect, on the one hand, of depriving the stockholders as a group of the equivalent amount of earnings available for dividends, and on the other, the corporation of the opportunity to declare dividends out of such earnings.↩
3. Louise K. Aprill, 13 T.C. 707↩.